**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 19-14441-CV-MIDDLEBROOKS/MAYNARD**
**(CASE NO. 16-14059-CR-MIDDLEBROOKS)**

**MATTHEW VAUGHN HAWKS,**

    **Movant,**

**v.**

**UNITED STATES OF AMERICA,**

    **Respondent.**

_____/

**REPORT RECOMMENDING DENIAL OF**
**MOTION TO VACATE SENTENCE UNDER § 2255 [DE 1]**

Matthew Vaughn Hawks ("Movant"), a prisoner in federal custody, seeks a writ of *habeas corpus* pursuant to 28 U.S.C. § 2255 [DE 1]. Movant is serving a 30-year sentence after pleading guilty to charges of child pornography production and possession. Movant's sentence was affirmed on direct appeal. Movant now challenges the constitutionality of his conviction and sentence based on alleged ineffective assistance of his trial counsel at sentencing.

I have reviewed the Motion, the Government's Response [DE 10], Movant's reply [DE 11], and the record from the underlying criminal proceedings. I also held an evidentiary hearing on April 27, 2021 [DE 28]. Upon consideration of the briefing, the testimony and evidence presented at the evidentiary hearing, argument of counsel, and all pertinent portions of the record, I recommend that the Motion be **DENIED** for the following reasons.

## BACKGROUND

On September 22, 2016, a federal grand jury in the Southern District of Florida returned an indictment charging Movant with five counts of production of visual depictions of minors

engaging in sexually explicit conduct, in violation of 18 U.S.C. § 2251(a) (Counts 1-5), and one count of possession of visual depictions of minors engaging in sexually explicit conduct, in violation of 18 U.S.C. § 2252(a)(4) (Count 6) [CR DE 3].[1]  On October 21, 2016, Assistant Federal Public Defender Panayotta Augustin-Birch was appointed to represent Movant [CR DE 10, CR DE 17].

On March 9, 2017, Movant pled guilty to Counts 1, 2, 3, and 6 pursuant to a written plea agreement supported by an accompanying factual proffer [CR DE 48-50].  In the plea agreement, the Government agreed to recommend a sentence of 30 years' imprisonment (360 months) [CR DE 49 at 6].  The factual proffer, which was signed by Movant and all counsel, set forth in detail the offense conduct forming the basis for Movant's guilty plea [CR DE 50].

The Presentence Investigation Report ("PSI") calculated a total offense level of 43, which accounted for specified reductions as well as certain enhancements because (1) the offense involved a minor between the ages of 12 and 16 years old and the commission of a sexual act or sexual contact; (2) Movant knowingly misrepresented his identity or used a computer or interactive computer service in the commission of the offense conduct; and (3) Movant engaged in a pattern of activity involving prohibited sexual conduct.  PSI ¶¶ 32-75.  The PSI assigned three criminal history points based on Movant's prior state conviction for falsely reporting a bomb to an elementary school in April 2014 for which he initially received 5 years of probation, and Movant's subsequent violation of that probation in 2016, for which he was sentenced to 10 years in prison.  PSI ¶ 77.  With a total offense level of 43 and a criminal history category of 3, Movant's advisory sentencing guidelines range was life in prison.  PSI ¶ 116.  However, because the statutory

---

[1] Citations to the underlying criminal case, 16-14059-Cr-Middlebrooks will be "[CR DE__]," while citations to the instant § 2255 civil proceeding will be "[DE__]."

maximum sentences for Movant's convictions were less than life, the guidelines range was adjusted to 100 years (1,200 months).  *Id.*

The PSI cited mental and behavioral health examinations that Movant received throughout his life.  One examination was a 2014 "behavioral crisis review report" by Board Certified Behavior Analyst Tesa Sansbury, MA, BCBA, who concluded that "[Movant] requires visual supervision 24 hours a day to ensure he does not engage in any illegal activities or come into any questionable contact with minors due to the result of his previous choices."  PSI ¶ 96.  Another 2014 report, authored by Dr. Daniel Tucker of the University of Florida, Shands Hospital following an outpatient psychiatric evaluation of Movant reported that Movant's "history of schooling has been a travail of impulsive actions leading to various restrictions, suspensions and punishment, with scarcely any gains of understanding as judged from persistence of his inappropriateness, nose for trouble, quickness to avail of an I don't know or I don't remember excuse when pressed for accountability, and a lack of progression in attainment of sufficient skills to remain in ordinary society."  *Id.* ¶ 97.  The PSI noted several treatment progress reports from Shands Hospital, one of which included remarks by Dr. Tucker expressing concern that Movant "was a menace to society who may be more aware of his actions than he lets on, and may be an antisocial sexual predator." *Id.* ¶ 100.

The PSI also described an earlier 2000 pediatric neurological evaluation by Dr. James Pollack after which Dr. Pollack stated that Movant's "behavior patterns … appear very unmanageable" and "[b]ecause [Movant's] issues do not emanate from pure emotional or behavioral disturbance but rather from misunderstanding of social information, medication will not be particularly effective for this problem."  *Id.* ¶ 102.  Dr. Pollack determined that Movant required an "intensive training program in social skills such that [Movant] can learn by rote how

to perform in … social situations." *Id.*

Prior to his sentencing hearing, Movant filed a Motion for Downward *Booker* Variance requesting that the Court impose only the mandatory minimum 15-year sentence [CR DE 58]. Movant also filed letters of support from family members, friends, former employers, and medical professionals [CR DE 55].

Movant's sentencing was held on May 16, 2017.  At the outset, the Court noted the reported offense level of 43, the criminal history category of 3, the advisory guideline of 100 years (1,200 months), the Government's agreement to recommend 30 years (360 months), and Probation's recommendation of 45 years (450 months) [CR DE 66 at 3].  Movant's trial counsel urged the Court to consider Movant's ongoing family support—in particular from his father and grandmother who both serve as Movant's co-guardians and were present at sentencing—as well as findings from Movant's "countless" evaluations with specific reference to Dr. Pollack's statement that Movant's "issues do not emanate purely from emotional or behavioral disturbance, but, rather, from misunderstanding of social information" which counsel described as being "important to think of … when we look at the facts of this case."  [*Id.* at 4-5].  Movant's trial counsel argued that a lower sentence was necessary to avoid "unwarranted disparities" with citation to five prior criminal cases in the Southern District of Florida involving similar offense conduct and charges in which other defendants received sentences ranging from 120 to 384 months [*Id.* at 12-15].

After noting Dr. Pollack's reported finding that "medication will not be particularly effective" and Dr. Tucker's concern "that the Defendant was a menace to society," the Court stated "I'm not sure punishment is the concern here as much as protection of the public.  I would agree with everything [Movant's trial counsel] said if it was – if punishment was the issue."  [*Id.* at 6].

Ultimately, the Court agreed to vary downward from the 1,200-month guideline range and sentenced Movant to 360 months' imprisonment,[2] to be followed by a lifetime term of supervised release [*Id.* at 29].  When pronouncing this sentence, the Court stated:

> I find sentencing in this case to be very, very difficult.  It is clear Mr. Hawks has diminished capacity and has had serious issues since he was quite young and has been evaluated a number of times.
>
> Those evaluations contain guarded prognoses. The doctors have said they don't think medications and therapy are likely to be effective, given his circumstances.
>
> And the treatment at Shands—the doctor there indicated that Mr. Hawks may be a sexual predator.
>
> Those reports all provide reason for concern.
>
> The crime in this case involved manipulative conduct with 13-year-old girls, several. Then I looked at the criminal history, which indicates efforts by Mr. Hawks to directly contact young girls.  I've also looked at the conditions that the State of Florida imposed after the bomb threat, which indicated that Mr. Hawks receive a mental health evaluation and follow recommended treatment and have [] no access to a computer, Internet, and not be within 200 feet of a public or private school.
>
> And despite those restrictions, Mr. Hawks was able to engage in the conduct in this instance.
>
> So those things cause me concern.
>
> In considering the 3553 factors, the primary — my primary concern is protection of the public. On the other hand, 1200 months does not seem to be — that's essentially a life sentence, which offers no hope to Mr. Hawks.  And so I don't believe that a life sentence is appropriate, given the circumstances in this case.
>
> For all those reasons, I am going to follow the Government recommendation in the plea agreement and vary from the 1200 months.

[*Id.* at 28-29].  A corresponding final judgment was entered against Movant [CR DE 60].

---

[2] The Court imposed a separate sentence of 360 months as to each of the first three counts and ordered the sentences to run concurrently with the undischarged portion of the 10-year state sentence Movant was already serving for violating his probation.  The Court also imposed a single 120-month sentence as to another count, to run concurrently as well [CR DE 66 at 29].  For ease of reference, Movant's sentence is referred to as a single sentence of 360 months' imprisonment.

On June 1, 2017, Movant filed a direct appeal challenging the procedural and substantive reasonableness of his sentence [CR DE 61]. On April 20, 2018, the Eleventh Circuit affirmed Movant's sentence. *U.S. v. Hawks*, 731 F. App'x 868, 870 (11th Cir. 2018). The Eleventh Circuit first found that plain error review applied because "[n]owhere in the record did [Movant's] counsel object to the district court's understanding of the facts." *Id.* at 870-71. In his direct appeal, Movant alleged three procedural errors. First, he argued that the Court erred by crediting Dr. Tucker's statements reflected in progress report notes "because they were not made in the context of an official diagnosis." *Id.* at 871. The Eleventh Circuit disagreed, finding that (1) the "court's use of the term 'report' is consistent with the [PSI], which refers to the document as a 'progress report[,]'" (2) "the progress reports clearly relate to the course of Hawks's treatment[,]" and (3) "Hawks did not object to the statements' inclusion in the PSI." *Id.* As to the second alleged procedural error, the Eleventh Circuit held that because the court had stated on the record at sentencing that it had reviewed the letters Movant submitted on his own behalf, "there is no evidence that the court plainly erred by failing to consider evidence submitted by the other health care and special needs professionals." *Id.*

As to the third alleged procedural error, the Eleventh Circuit found that the sentencing court, referring to Dr. Pollack's report, committed plain error by incorrectly stating that "doctors have said they don't think medications and therapy are likely to be effective, given his circumstances." *Id.* The Eleventh Circuit went on to find, however, that Movant failed to prove that this procedural error affected his substantial rights because:

> The district court explicitly considered several factors aside from Dr. Pollack's report that supported the district court's emphasis on the need to protect society, including: Hawks's manipulative and deceitful behavior while chatting with his victims, his ability to violate his probation even while under strict supervision, his attempts to directly contact other young girls, and Dr. Tucker's opinion that Hawks was a danger to society. Given these other factors, Hawks has not shown the district

6

court's erroneous understanding of Dr. Pollack's report affected the outcome of the sentencing.

*Id.* at 872.  The Eleventh Circuit thus found Movant's sentence procedurally sound.  *Id.*

The Eleventh Circuit also found Movant's sentence to be substantively reasonable.  *Id.* Rejecting Movant's argument that the sentencing court improperly weighed the applicable § 3553(a) factors, the Eleventh Circuit held that the sentencing court "considered [Movant's] diminished capacity, stating: 'It is clear Mr. Hawks has diminished capacity and has had serious issues since he was quite young and has been evaluated a number of times.'" *Id.*  According to the Eleventh Circuit, the sentencing court considered Movant's diminished capacity as a mitigation factor as evidenced by its statement that the sentencing in this case was "very, very difficult." *Id.* The Eleventh Circuit pointed to record evidence "which the district court was entitled to credit, that cast doubt on representations that Hawks was not a danger to the community" including evaluator Tesa Sansbury's determination that Movant "required 24-hour supervision in order to ensure he did not come into questionable contact with minors" and record evidence that Movant "demonstrated predatory and manipulative behavior in chats with young women, and circumvented the restrictions of his probation by accessing the internet to target young girls in chatrooms." *Id.*

Finally, Movant argued that his sentence was substantively unreasonable as shown by the "less harsh" sentences pronounced in cases of other "graver offenders with mental limitations." *Id.*  The Eleventh Circuit disagreed and found that:

> Hawks's sentence of 360 months' imprisonment is below the guidelines range of 1,200 months. After considering all the factors, the district court varied downward by 840 months. The district court also ruled that the 30 year sentence it was imposing would run concurrently with a 10-year sentence Hawks was already serving. Comparison with the cases Hawks cites does not leave us with a 'firm conviction' that the district court clearly erred in imposing his below-guidelines sentence.

*Id.* at 872-73.   Finding that Movant failed to demonstrate any procedural or substantive unreasonableness, the Eleventh Circuit affirmed his sentence.  *Id.* at 873.  On November 19, 2018, the U.S. Supreme Court denied Movant's petition for writ of *certiorari* [CR DE 71].

On November 11, 2019, Movant timely filed the instant § 2255 Motion for habeas relief asserting that his trial counsel provided ineffective assistance at sentencing by (1) failing to submit the April 2017 report of psychologist Dr. Eric Imhof as a mitigating factor; (2) failing to object to the inclusion of Dr. Tucker's unofficial statements in the PSI; (3) failing to object to the sentencing court's finding that "doctors have said they don't think medications and therapy are likely to be effective;" and (4) failing to object to the sentencing court's finding that "doctors indicated that Hawks may be a sexual predator."  [DE 1 at 4].  Movant contends that he was prejudiced on appeal because his trial counsel failed to properly make specific objections to the sentencing court's erroneous findings of facts which led to a "much higher (almost impossible)" plain error standard of review on appeal [*Id.* at 11].

In response, Respondent first argues that the merits of Movant's collateral claims need not be reached because "the Eleventh Circuit's procedural bar on relitigation precludes this Court from reconsidering issues raised, either directly or by implication, on direct appeal." [DE 10 at 11-12].  Alternatively, on the merits, Respondent argues that Movant has not proven either deficient performance by his trial counsel's performance or resulting prejudice [*Id.* at 12-20].

On April 27, 2021, I held an evidentiary hearing, at which time I heard the sworn testimony of Dr. Eric Imhoff, Ms. Panayotta Augustin-Birch (Movant's trial counsel), and Gregory Hawks (Movant's father) [DE 28; DE 29].  In addition, with no objections, the following four documentary exhibits were admitted as evidence: (1) Dr. Imhof's report dated May 13, 2017; (2) the sentencing

hearing transcript; (3) page 26 of the PSI; and (4) a Bureau of Prisons forensic evaluation report [DE 29; DE 30].

## STANDARD OF REVIEW

Because collateral review is not a substitute for appeal, the grounds for collateral attack on a final judgment under 28 U.S.C. § 2255 are extremely limited.  Under § 2255, a person in federal custody may move to vacate, set aside, or correct his sentence.  A district court is authorized to grant § 2255 relief on four grounds: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court lacked jurisdiction to impose the sentence; (3) the sentence exceeds the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack.  28 U.S.C § 2255(a).  If a court finds a claim under § 2255 valid, the court "shall vacate and set the judgment aside and shall discharge the prisoner, grant a new trial, or correct the sentence."  28 U.S.C. § 2255(b).

Relief under § 2255 is reserved for transgressions of constitutional rights, and for that narrow compass of other injury that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice.  *See Lynn v. U.S.*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted); *see also U.S. v. Frady*, 456 U.S. 152, 165 (1982).  A § 2255 movant "bears the burden to prove the claims in his § 2255 motion."  *Rivers v. U.S.*, 777 F.3d 1306, 1316 (11th Cir. 2015); *see also Beeman v. U.S.*, 871 F.3d 1215, 1221–23 (11th Cir. 2017).  If "'the evidence does not clearly explain what happened … the party with the burden loses.'"  *Beeman*, 871 F.3d at 1225 (quoting *Romine v. Head*, 253 F.3d 1349, 1357 (11th Cir. 2001)).  A § 2255 movant will not be entitled to relief "when his claims are merely 'conclusory allegations unsupported by specifics' or 'contentions that in the face of the record are wholly incredible.'" *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (citation omitted).

## DISCUSSION

Movant asserts various instances of alleged ineffective assistance of counsel in connection with his sentencing.   As a threshold matter, I will first address Respondent's argument that Movant's claims are procedurally foreclosed because they were already raised and rejected on direct appeal.  I will then evaluate Movant's claims on the merits.

### 1.    Movant's Claims 2, 3, and 4 Are Procedurally Barred

The law is well settled that § 2255 claims are procedurally barred if such claims were already raised and resolved on direct appeal.  *Murray v. U.S.*, 2019 WL 12337894, at *6 (11th Cir. June 19, 2019) (citing *Stoufflet v. U.S.*, 757 F.3d 1236, 1239 (11th Cir. 2014) (collecting cases) and *Rozier v. U.S.*, 701 F.3d 681, 684 (11th Cir. 2012) ("At least where there has been no intervening change in controlling law, a claim or issue that was decided against a defendant on direct appeal may not be the basis for relief in a § 2255 proceeding.").  "Once a matter has been decided adversely to a defendant on direct appeal it cannot be re-litigated in a collateral attack under section 2255." *U.S. v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000) (quotation omitted). Discretion is afforded to a court's determination of whether a particular claim has been previously raised but any doubts as to whether two grounds are different or the same "should be resolved in favor of the applicant." *Sanders v. U.S.*, 373 U.S. 1, 16 (1963) ("identical grounds may often be proved by different factual allegations ... or supported by different legal arguments ... or be couched in different language ... or vary in immaterial respects").

Here, three of Movant's collateral claims represent an attempt to relitigate claims that were previously raised and rejected on direct appeal.  In his direct appeal, Movant alleged that the sentencing court erred by (1) considering Dr. Tucker's progress report note from the PSI to conclude that Movant "may be a sexual predator;" (2) failing to review or weigh letters from other

10

health care or special needs professionals; and (3) erroneously determining that Dr. Pollack concluded that Movant was effectively untreatable. *Hawks*, 731 F. App'x at 871. Movant argued that these errors resulted in an improper weighing of the sentencing factors and, thus, a procedurally and substantively unreasonable sentence. *Id.* at 870-71. After evaluating each claim on the merits, the Eleventh Circuit affirmed Movant's sentence. *Id.* at 873.

In his instant § 2255 Motion, Movant alleges that his trial counsel rendered constitutionally ineffective assistance at sentencing by failing to object to the inclusion of Dr. Tucker's progress report note in the PSI and failing to object to the sentencing court's findings that "doctors have said they don't think medications and therapy are likely to be effective" and "doctors indicated that Hawks may be a sexual predator." These claims by Movant, while couched in terms of alleged ineffective assistance, represent the same errors identified and directly addressed on direct appeal. To reach the merits of these alleged ineffective assistance claims would require the same legal analysis of the same findings that the Eleventh Circuit reviewed on direct appeal. This is because the "prejudice" standard of an ineffective assistance claim is identical to the "substantial rights" standard of plain error review. *Gordon v. U.S.*, 518 F.3d 1291, 1298 (11th Cir. 2008) ("When a claim of ineffective assistance is based on a failure to object to an error committed by the district court, that underlying error must at least satisfy the standard for prejudice that we employ in our review for plain error … It would be nonsensical if a petitioner, on collateral review, could subject his challenge of an unobjected-to error to a lesser burden by articulating it as a claim of ineffective assistance.") (citations omitted); *see also Cadet v. U.S.*, 2020 WL 6994938, at *3 (S.D. Fla. Jan. 23, 2020), *report and recommendation adopted*, 2020 WL 6994478 (S.D. Fla. Feb. 26, 2020).

The Eleventh Circuit, in finding Movant's sentence procedurally and substantively reasonable, specifically (or, at the very least, implicitly) rejected Movant's arguments relating to

the sentencing court's consideration of Dr. Tucker's statements identified in a progress report, the finding that "doctors have said they don't think medications and therapy are likely to be effective" with reference to Dr. Pollack's report, and the finding that "doctors indicated that Hawks may be a sexual predator."   The Eleventh Circuit found that the sentencing court plainly erred by concluding that Movant was effectively untreatable with reference to Dr. Pollack's report because the report actually stated that "while medication alone would not be effective, [Movant] required an 'intensive training program' in order to perform in social situations." *Hawks*, 731 Fed. Appx. At 871.  The Eleventh Circuit found this plain error insufficient to overturn Movant's sentence, however, because Movant failed to show that this error affected the outcome of his sentencing.  In making this finding, the Eleventh Circuit specifically referred to other factors aside from Dr. Pollack's report that the sentencing court considered in reaching its sentencing decision.  *Id.* at 871-72.  The Eleventh Circuit's holdings on these issues would govern any analysis in these collateral proceedings pertaining to trial counsel's alleged failure to object to the inclusion of Dr. Tucker's statements in the PSI or the sentencing court court's findings based on Dr. Pollack's report, as well as any resulting prejudice.  Movant is thus procedurally barred from again raising these same arguments as stated in claims 2, 3, and 4 of his § 2255 Motion.  *See Stoufflet*, 757 F.3d at 1243. This procedural bar alone is grounds for denying these three claims made by Movant.[3]

### 2.    *Alternatively, All of Movant's Ineffective Assistance Claims Fail on the Merits*

In any event, Movant's ineffective assistance claims all fail on the merits because he has not sufficiently demonstrated either constitutionally deficient performance or prejudice.  A claim of ineffective assistance is evaluated against the standard announced in *Strickland v. Washington*,

---

[3] Movant's claims relating to the non-submission of Dr. Imhof's report and trial counsel's alleged failure to make specific objections at the sentencing hearing regarding the court's understanding of the facts are not procedurally barred as these claims were not raised or considered on direct appeal.

466 U.S. 668 (1984).  To show ineffective assistance, a movant must prove two things: (1) "counsel's performance was deficient," and (2) "the deficient performance prejudiced the defense." *Id.* at 687.

Performance is deficient when "it f[alls] below an objective standard of reasonableness and [i]s outside the wide range of professionally competent assistance." *See Johnson v. Sec'y, DOC*, 643 F.3d 907, 928 (11th Cir. 2011).  In determining whether counsel's conduct was deficient, a court must, with much deference, consider if "counsel's assistance was reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688.  Reviewing courts "must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Id.* at 689; *see also Chandler v. U.S.*, 218 F.3d 1305, 1315–16 (11th Cir. 2000).  To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take.  *Gordon v. U.S.*, 518 F.3d 1291, 1301 (11th Cir. 2008); *Chandler*, 218 F.3d at 1315.

Under the prejudice prong, a movant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011).  In the case of alleged sentencing errors, a movant must demonstrate there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level. *Glover v. U.S.*, 531 U.S. 198, 203–04 (2001).  Where an ineffective assistance claim is based on counsel's failure to properly preserve an issue for appeal, "the appropriate prejudice inquiry asks whether there is a reasonable likelihood of a more favorable outcome on appeal had the claim been preserved." *Davis v. Sec'y for Dept. of Corrections*, 341 F.3d 1310, 1316 (11th

Cir. 2003).  "That is the same burden of showing prejudice that an appellant has to meet in order to establish plain error on direct appeal." *Almy v. U.S.*, 485 F. App'x 384, 386 (11th Cir. 2012); *see also Gordon*, 518 F.3d at 1298.

It is a movant's burden to prove both deficiency and prejudice "by a preponderance of the competent evidence."  *Demar v. U.S.*, 228 F. App'x 940, 950 (11th Cir. 2007); *Johnson v. Alabama*, 256 F.3d 1156, 1176 (11th Cir. 2001) ("The petitioner bears the burden of proof on the 'performance' prong as well as the 'prejudice' prong of a *Strickland* claim, and both prongs must be proved to prevail.").  Given the principles and presumptions set forth above, "'the cases in which habeas petitioners can properly prevail ... are few and far between.'"  *Chandler*, 218 F.3d at 1313 (quoting *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (en banc)).  This is because the test is not what the best lawyers would have done or even what most good lawyers would have done but, rather, whether some reasonable lawyer could have acted in the circumstances as defense counsel acted. *Dingle v. Sec'y for Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007); *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000).

### i.     *Movant Has Not Established Deficient Performance*

None of the alleged errors Movant claims rise to the level of constitutionally deficient performance.  For starters, as evidenced by her over 20 years of experience practicing law, her many appearances before this Court, and her arguments made on Movant's behalf at sentencing, Ms. Augustin-Birch is a seasoned Assistant Federal Public Defender with strong experience representing criminal defendants facing similar serious federal charges and advisory sentencing guideline ranges.  *Strickland's* presumption that counsel's conduct was reasonable is thus even stronger in this case because "[e]xperience is due some respect."  *Chandler*, 218 F.3d at 1316 n.18.

At the evidentiary hearing, Ms. Augustin-Birch credibly testified that she met with Movant nine times throughout the course of representing him.  She testified that her primary strategy at sentencing was to use other similar cases throughout the district to argue for Movant to receive the least amount of time possible; to present the testimony of Movant's father who could offer a unique perspective about his son's circumstances; to submit letters of support on Movant's behalf; and to file and argue a motion for downward variance at sentencing.  She testified that while she arranged for Movant to be evaluated by Dr. Imhof to determine any mitigation that could be used, she ultimately decided not to present Dr. Imhof's evaluation based on her review of the case, the facts, and because there was a prior evaluation done by Dr. Ruiz with the Bureau of Prisons in which Dr. Ruiz found Movant competent to proceed with a note that Movant was malingering by intentionally exaggerating and fabricating cognitive impairment.  In addition to concerns about Dr. Imhof's report being used as a way to shift focus back to these prior noted concerns of malingering, she was also concerned with the nature of the chats Movant had with the victims.  She testified that she ultimately exercised her professional judgment in deciding to not submit Dr. Imhof's evaluation and stand by her primary strategy of presenting other similar cases at sentencing with a focus on avoiding unwarranted sentencing disparities.

Movant's first claim is that his trial counsel was ineffective for failing to present Dr. Imhof's May 2017 report before or at sentencing, arguing that this report "demonstrated that [Movant's] doctors believed he had a low risk for future sexual offenses, was amenable to treatment, and was a good candidate for placement in the community with supervision and mental health services." [DE 1 at 10].  Movant's second claim is that his trial counsel was ineffective for failing to object to the inclusion of "informal" statements made by Dr. Tucker in the PSI [*Id.* at 5-6].  In his Reply, Movant combines these two claims to assert that if trial counsel had presented

Dr. Imhof's report and objected to the inclusion of Dr. Tucker's statements in the PSI, the sentencing court "would not have erroneously concluded that the 'doctors had concern that Hawks was a sexual predator' and that he was not amenable to treatment" [DE 11 at 3]. According to Movant, these erroneous conclusions "resulted in the court's improper weighing of the sentencing factors." [*Id.*].

Contrary to Movant's assertions, considering the totality of the circumstances, it was not unreasonable for trial counsel to opt not to present Dr. Imhof's report for use at sentencing. The sentencing court had already received evaluations by several medical professionals reporting Movant's significant mental limitations and his need for intensive therapy [CR DE 55; CR DE 58]. Trial counsel was not constitutionally required to present every available piece of potentially mitigating evidence. *Chandler*, 218 F.3d at 1319 ("Counsel is not required to … present all mitigation evidence, even if the additional mitigation evidence would not have been incompatible with counsel's strategy … Considering the realities of the courtroom, more is not always better. … Good advocacy requires "winnowing out" some arguments, witnesses, evidence, and so on, to stress others) (internal citations omitted).

Upon consideration of Dr. Imhof's hearing testimony and independent review of Dr. Imhof's report I find it notable that his report contains a section summarizing previous evaluations however it inexplicably does not reference the reports of prior evaluators Dr. Tucker, Dr. Pollack, Dr. Ruiz, or Behavior Analyst Tesa Sansbury as sources of information; nor does the report address noted concerns by other medical sources of malingering by Movant [DE 8 at 9-10]. At the evidentiary hearing, Dr. Imhof confirmed that he did not review these other reports in completing his risk assessment of Movant. In addition, Dr. Imhof's report noted that the results of one assessment "should be regarded with caution" because Movant produced a "profile of questionable

validity" and "attempted to present himself in a particularly favorable light … suggesting he may have attempted to underreport symptomology in responding to the test items" [DE 8 at 10].

Under the circumstances, trial counsel reasonably anticipated that presenting Dr. Imhof's report could invite argument that the report was incomplete.  Given the fact that the sentencing court already had extensive prior reports with mitigating information concerning Movant's diminished mental capacity from other medical professionals, it was reasonable for trial counsel to determine that presenting Dr. Imhof's evaluation was not only unnecessary but could harm the overall goal of achieving the best possible outcome at Movant's sentencing by opening the door to further discussion of signs of malingering.  Trial counsel credibly testified to exercising her professional judgment in deciding to not submit Dr. Imhof's evaluation and instead standing by her primary strategy of presenting other similar cases at sentencing with a focus on unwarranted sentencing disparities.  The sentencing transcript bears out her pursuit of this main strategy.

Trial counsel's decision to not object to the inclusion of Dr. Tucker's progress report note in the PSI or to the sentencing court's consideration of this note was also reasonable.  There was no valid basis to object.  The PSI correctly identified the "several progress reports from Shands Hospital" as being "[i]n addition to Dr. Tucker's diagnosis" in the preceding paragraph [PSI ¶ 100].  Moreover, as found by the Eleventh Circuit, these progress reports had information relevant to Movant's treatment.  *Hawks*, 731 F. App'x at 871 ("[A]lthough they are not diagnoses, the progress reports clearly relate to the course of Hawks's treatment—the documents issued from the hospital where Hawks received care and include statements by his physician.").  The sentencing court's finding that one progress report "indicated Hawks may be a sexual predator" accurately recounted the statement reportedly made by Dr. Tucker [PSI ¶ 100; CR DE 66 at 28].  Contrary to Movant's argument, there is no sign that the sentencing court treated this statement as any sort of

17

official diagnosis.  Instead, the sentencing court viewed this statement as a recognition by Dr.
Tucker that Movant may pose more of a danger to society than he presented in treatment.  This
determination was consistent with the unchallenged reports of other medical evaluators who cited
evidence of malingering in that Movant made his condition seem worse than it was [DE 66 at 24].

Regarding Dr. Pollack, Movant is correct that trial counsel did not object to the sentencing
court's characterization of Dr. Pollack's findings in concluding that doctors did not think
medications and therapy would be effective for Movant.  And, as made clear by the Eleventh
Circuit, the sentencing court plainly erred in making this finding.  *Hawks*, 731 F. App'x at 871.
However, trial counsel's failure to object to this single finding was not so substantial in the grander
scheme of overall circumstances to render trial counsel's performance constitutionally deficient.
Importantly, counsel's performance must be evaluated with a high degree of deference and without
the distorting effects of hindsight.  *Strickland*, 466 U.S. at 689.  Dr. Pollack evaluated Movant in
2000 and concluded that he "has a social learning disability and social difficulties that resembled
Asperger syndrome," his "behavior patterns … appear very unmanageable," and he "needs an
intensive training program in social skills such that he can learn by rote how to perform in [v]arious
social situations" [PSI ¶ 102].  In 2014, Behavior Analyst Tesa Sansbury evaluated Movant and
reported that he would need "visual supervision 24 hours a day to ensure he does not engage in
illegal activities or come into any questionable contact with minors due to the result of his previous
choices." [PSI ¶ 96].  Given these reports, the sentencing court's conclusion that "doctors have
said they don't think medications and therapy are likely to be effective," was arguably a fair
interpretation of the available evidence.  A reasonable attorney standing in trial counsel's place at
sentencing might have viewed the sentencing court's statement as a deduction drawn from all the
available evidence relating to Movant's treatment history and characteristics, and would have seen

no valid grounds to object.  That Movant's trial counsel did not to object to what the Eleventh Circuit later confirmed to be the sentencing court's mischaracterization of Dr. Pollack's findings simply cannot be found outside the wide range of professionally competent assistance, especially considering that the sentencing court's ultimate sentencing determination was supported by many other factors and considerations.

      ***ii.***        ***Movant Has Not Established Prejudice***

Movant contends that his trial counsel's failure to present Dr. Imhof's report and failure to clarify the medical evidence in the PSI led the Court to make erroneous conclusions pertaining to Movant's "potential future threat to the community" which "influenced the trial court's sentencing decision" [DE 1 at 10-11].  If counsel "had presented and explained the significance of all mitigating evidence," Movant continues "there is a reasonable probability that the result of the proceedings would have been different." [*Id.* at 11].  I disagree.

Movant fails to show that any objection he claims his trial counsel should have made, either singly or in combination, would have significantly impacted the outcome at sentencing.  The progress report with Dr. Tucker's statement was relevant evidence that the PSI accurately represented.  Movant has not identified any valid legal basis to object to either the inclusion of this statement in the PSI or the sentencing court's consideration of it at sentencing.  There is also no evidence to reasonably suggest that objecting to the sentencing court's misstatement of Dr. Pollack's conclusion would have changed the outcome of the proceeding.  The sentencing court concluded that Movant was not treatable not solely based on Dr. Pollack's report, but also after considering Movant's documented history of reoffending while in treatment and under supervision [CR DE 66 at 27-29].  Considering the totality of evidence that was before the court at sentencing, it is highly unlikely that objecting to the misstatement of Dr. Pollack's findings to point out that

Dr. Pollack had opined that Movant required "an intensive training program" to address "behavior patterns … [that] appear very unmanageable," would have changed the sentencing court's primary determination that Movant posed a danger to society.

Similarly, Movant fails to demonstrate that Dr. Imhof's report would have caused the sentencing court to disregard all the other medical professional reports and the sentencing court's concerns based on other record evidence, including Behavior Analyst Sansbury's report that Movant required around-the-clock supervision to ensure that he did not come into questionable contact with minors. This is especially true considering that Dr. Imhof's report did not specifically address or negate the conclusions of other medical professionals, such as Behavior Analyst Sansbuy and Dr. Tucker, who had evaluated Movant. Movant suggests that because Dr. Imhof's report was the most recent report, it was somehow more reliable than the others and "might have influenced the [sentencing] court's appraisal of [Movant's] potential future threat to the community." [DE 1 at 11]. In fact, a review of the overall evidence reveals that Dr. Imhof's conclusion that Movant presented a low risk of reoffending was an outlier among the conclusions reached by other medical professionals who had evaluated Movant. The mainstream recommendation was that Movant required strict supervision and intensive therapy to ensure that he did not reoffend. Considering the overall circumstances and evidence available to the sentencing court, that Dr. Imhof's report "might have" changed the outcome is not enough to meet *Strickland's* much higher requirement of showing a reasonable probability that the outcome would have been different. Movant has not made the requisite showing.

The sentencing court had substantial evidence, independent of the challenged findings, from which to conclude that Movant posed a danger to society. As succinctly summarized by the Eleventh Circuit on direct appeal:

20

> The record contains evidence, which the district court was entitled to credit, that cast doubt on representations that Hawks was not a danger to the community. Tesa Sansbury, one of the medical professionals who evaluated Hawks, determined that he required 24-hour supervision in order to ensure he did not come into questionable contact with minors. The record also showed that Hawks demonstrated predatory and manipulative behavior in his chats with young women, and circumvented the restrictions of his probation by accessing the internet to target young girls in chatrooms.

*Hawks*, 731 F. App'x at 872.  Indeed, a review of the factual proffer filed in support of Movant's guilty plea demonstrated a concerning pattern of Movant's repeated attempts to contact young girls for inappropriate reasons through manipulative and threatening behavior, including while he was already on probation for another conviction for calling in a bomb threat to an elementary school [CR DE 50 at 5-16].  As the sentencing court recognized, Movant exhibited a demonstrated ability to surreptitiously contact his victims at the same time he was completing weekly, court-ordered mental health sessions, was under a limited guardianship, and was on supervised probation that included a restriction on his internet use [CR DE 66 at 28].  In sum, the totality of the evidence before the sentencing court sufficiently supports the conclusion that the 30-year prison sentence was necessary to protect society.  In the face of the other overwhelming evidence supporting the final sentencing decision, Movant plainly cannot establish a reasonable probability that the inclusion of Dr. Imhof's report would have altered the outcome at his sentencing.

Lastly, Movant asserts that he was prejudiced on appeal because his arguments were subjected to a "much higher (almost impossible) standard of review—plain error standard" caused by trial counsel's failure to make specific objections to the sentencing court's erroneous findings of fact [DE 1 at 11].  I note that this argument by Movant lacks any meaningful discussion or citation to supporting legal authority.  In his direct appeal, Movant challenged the sentencing court's fact finding and weighing of the applicable sentencing factors.  Movant's first two alleged procedural errors would have been affirmed under any standard of review, as the Eleventh Circuit

found no error in the sentencing court's consideration of Dr. Tucker's report or the letters submitted by other mental health professionals to have evaluated Movant. *Hawks*, 731 F. App'x at 871.

The only error that should arguably be considered for purposes of evaluating Movant's ineffective assistance claims is the sentencing court's misinterpretation of Dr. Pollack's report. The Eleventh Circuit found plain error in the sentencing court's conclusion that Movant's doctors considered him effectively untreatable. Importantly, however, the Eleventh Circuit went on to find that Movant failed to show that this error impacted his substantial rights. Specifically, "Hawks has not shown the district court's erroneous understanding of Dr. Pollack's report affected the outcome of the sentencing." *Hawks*, 731 F. App'x at 872. This holding is supported by the sentencing court's thorough and comprehensive explanation of its rationale for imposing a sentence of 360 months (30 years), which clearly set forth the many factors that influenced this decision [CR DE 66 at 27-28]. As the Eleventh Circuit found:

> The district court explicitly considered several factors aside from Dr. Pollack's report that supported the district court's emphasis on the need to protect society, including: Hawks's manipulative and deceitful behavior while chatting with his victims, his ability to violate his probation even while under strict supervision, his attempts to directly contact other young girls, and Dr. Tucker's opinion that Hawks was a danger to society.

*Hawks*, 731 F. App'x at 872. On the present record and under the totality of circumstances, Movant has failed to show a reasonable probability that, but for his trial counsel's alleged errors, the result of his sentencing or his direct appeal would have been different.

## **CERTIFICATE OF APPEALABILITY**

Rule 11(a) of the Rules Governing Section 2255 Proceedings provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy

the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the Court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2255 Cases.

Movant is not entitled to a certificate of appealability.  "A certificate of appealability may issue … only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  To merit a certificate of appealability, Petitioner must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *see also Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir. 2001).  For the reasons stated above, I find that Movant's claims are without merit and he cannot satisfy the *Slack* test.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the District Judge in the objections permitted to this report and recommendation.

## **RECOMMENDATION**

For all the above reasons, Movant is not entitled to relief on any of his claims raised in these collateral proceedings.  I thus respectfully **RECOMMEND** that Movant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence [DE 1] be **DENIED** and that no certificate of appealability be issued.

## **NOTICE OF RIGHT TO OBJECT**

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Donald M. Middlebrooks, United States District Court Judge for the Southern District of Florida, within FOURTEEN (14) DAYS of being served with a copy of this Report and

Recommendation. Failure to timely file objections shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).  Conversely, if counsel do not intend to file objections, they shall file a notice advising the District Court within FIVE (5) DAYS of this Report and Recommendation.

      **DONE AND RECOMMENDED** in Chambers at Fort Pierce, Florida, this 11th of March, 2022.

SHANIEK M. MAYNARD
U.S. MAGISTRATE JUDGE